GENEVIEVE L. HART, appellant,

*v.*

ARTHUR L. LAMBORN et al., respondents.

[Argued May term, 1925. Decided October 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who rendered the following opinion:

"The Court—Mrs. Hart, complainant, executed a bond and mortgage on her home to Mrs. Lamborn, defendant, for $26,000, and by her bill seeks to set them aside on the ground that they were procured on a false or artificial consideration, and by duress. The counter-claim prays a foreclosure of the mortgage. The law imposes a very great burden and responsibility upon Mrs. Hart to establish the fraud alleged. To overcome these regularly executed documents, under seal, the evidence of fraud must be clear and convincing. Mrs. Hart claims that she, the owner of the four patents, assigned them to a corporation formed by her husband and Mr. Lamborn in consideration of forty-nine per cent. of the capital stock of the company, and of Mr. Lamborn's discharging a mortgage on her home, on which there was due $24,500, besides taxes on the land, &c., and which was then under foreclosure. That Mr. Lamborn advanced the money, but later forced her, under threat of arrest, to give the bond and mortgage in suit in repayment. It appears that Mr. Hart is an inventor; he had patents, or applications for patents, and he sought and obtained the aid of Mr. Lamborn to promote his inventions, Mr. Lamborn to furnish the funds; Hart the brains. The agreement is in writing, states the terms, what each was to contribute, the division of the capital stock of the corporation to be formed, &c., after test of Mr. Hart's patents proved satisfactory to Mr. Lamborn.

While the tests were under way Mr. Lamborn agreed to lend Hart the money to pay off the foreclosure suit; that the property was to be bought in at the sheriff's sale, and a new bond and mortgage given for the loan. Mr. Lamborn got his wife to lend the money. The foreclosure went to a sale. Hart bid in the property and took title in the name of his wife. He paid the purchase price with Mrs. Lamborn's check and a draft on her account, both payable to the sheriff, aggregating $24,500, which were given to Hart for that purpose. Then Hart and Mrs. Hart refused to give the mortgage, and only after pressure upon both and threats of prosecution, and, after a long delay, Mrs. Hart executed and delivered the documents. It stands out prominently in the case that the promotion scheme and the loan were unrelated and entirely independent transactions. The written contract indicates that. The consideration for the assignment of the patents to the corporation was the issuing of the forty-nine per cent. of the stock. The mortgage transaction arose after that deal. In both matters, the patents promotion and the loan, Mr. Lamborn dealt only with Mr. Hart. While the patents stood in Mrs. Hart's name, they were dealt with by Mr. Hart as his own; Mr. Lamborn understood they were owned or controlled by him. None of the negotiations was with Mrs. Hart. She knew only what her husband told her. She left all to him. Now, it may be that he tricked her into believing that, by contributing the patents, in which she had invested some $15,000, she would receive money enough to pay off the mortgage under foreclosure, to have her home clear of it, and forty-nine per cent. of the stock of the corporation, or that he painted to her some rosy prospect of that kind. If that was the case, we can readily understand why. Mrs. Hart refused to give the mortgage. But Hart knew better; he knew that the $24,500 was an out and out loan, for which a mortgage was to be given, and that it was aside from the patent's promotion. He tried to cheat Mrs. Lamborn out of her money; that is clear. If Mrs. Hart was not a party to the cheat, she undoubtedly was keenly disappointed when the truth was disclosed. It is

urged that Mrs. Hart's husband was acting as her agent and that Lamborn and his wife were put on notice, and that an inquiry of her would have disclosed upon what consideration she parted with the patents. The fact is that Hart dealt with the patents as his own, and, though they stood in her name, there was no duty on the part of Mr. Lamborn to inform himself of the source of Hart's title or his control of them.

"As to the duress. When Hart delayed giving the bond and mortgage Lamborn threatened him with the district attorney; threatened to lay the matter before the district attorney in New York. Mrs. Hart says he also threatened her with criminal prosecution, but I do not find that to be so. Now, Hart's conduct was fraudulent, and it may be that Mrs. Hart was a party to it, although I am unwilling to say that. Lamborn's demand upon him and her were just. They had his wife's money and they refused to give the security. I know of no rule that makes it oppression to threaten criminal action to compel one to do what he is lawfully obliged to do. I find no oppression in fact or in law in this case.

"The prayer of the bill will be denied and the foreclosure ordered."

*Mr. Nathan H. Berger,* for the appellant.

*Messrs. Lindabury, Depue & Faulks,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Backes.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.